# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| L.O.D.C. GROUP, LTD, | § | |
| *Plaintiff,* | § § § | Civil Action No. 4:21-CV-00568 |
| v. | § § | Judge Mazzant |
| ACCELERATE360, LLC, | § § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss (Dkt. #12). Having considered the motion, the response, and the relevant pleadings, the Court finds that the motion should be **GRANTED in part** and **DENIED in part.**

### BACKGROUND

This case is a contracts dispute between Plaintiff L.O.D.C. Group, Ltd ("Lily") and Defendant Accelerate360, LLC ("Accelerate"). Lily is a Texas limited partnership with its principal place of business in Denton County, Texas, that privately manufacturers nutritional supplements and personal care products (Dkt. #8 ¶¶ 1, 2).[1] Accelerate is a Delaware limited liability company with its principal place of business in Cobb County, Georgia, that works as a product supplier for a network of retailers (Dkt. #8 ¶ 3).[2]

**I.   The Hand Sanitizer Contract**

The relationship between Lily and Accelerate began in the Spring of 2020 during the peak

---

[1] As alleged in the Amended Complaint, Lily has three limited partners, each of whom is a natural person residing in Texas. Lily's sole general partner is a Texas corporation with its principal place of business in Texas (Dkt. #8 ¶ 2).
[2] As alleged in the Amended Complaint, Accelerate's sole member is a Delaware limited liability company with its principal place of business in Georgia. The sole member of that entity is a Delaware limited liability company with its principal place of business in Florida. The sole member of that entity is a Delaware corporation with its principal place of business in Florida (Dkt. #8 ¶ 3).

of the COVID-19 pandemic. Accelerate first approached Lily, inquiring whether Lily could manufacture a bulk amount of private label hand sanitizer. Then, on April 28, 2020, Accelerate sent Lily a purchase order (*see* Dkt. #8, Exhibit 1 (the "Purchase Order")). The Purchase Order incorporates the terms previously agreed to by the parties—namely that Accelerate would purchase: (1) 4,000,080 units of 2oz hand sanitizer at $0.90 per unit; and (2) 4,000,032 units of 8oz hand sanitizer at $1.86 per unit (Dkt. #8 ¶¶ 7–8). The Purchase Order listed the "due date" of the order as July 8, 2020. However, the Purchase Order also included thirty-one terms and conditions (the "Terms and Conditions") which, at least according to Lily, were not discussed by the parties.

Pursuant to the parties' agreement, Lily "acquired all the necessary raw materials and packaging supplies necessary to fill Accelerate's order in a timely fashion" (Dkt. #8 ¶ 8). Because Accelerate requested a private label product, all of these materials were unique to Accelerate's order (Dkt. #8 ¶ 8). In June 2020, after Lily "had manufactured approximately half of the order," Accelerate indicated that it could not take delivery of the products because it did not have adequate warehouse space (Dkt. #8 ¶ 1). Accelerate requested Lily store the finished products in Lily's warehouse, and that Lily halt any further production until Accelerate could obtain additional warehouse space. Lily had "little choice but to comply given that Lily was running out of room to store Accelerate's finished goods" (Dkt. #8 ¶ 9).

It was not until August 2020 that Accelerate obtained a warehouse and finally accepted delivery of the finished product Lily had been storing (Dkt. #8 ¶ 10). However, Accelerate did not authorize Lily to resume or complete production of the remainder of the Purchase Order. As a consequence, Lily was left with a substantial amount of the unique materials Lily had obtained to fill Accelerate's order—including specialty packaging, labels, raw materials, and bulk blended

sanitizer—that had cost Lily approximately $1,800,000 (Dkt. #8 ¶ 11). Without the authorization to turn these materials into finished products, Accelerate left Lily with no recompense for the expenses Lily had incurred in preparation of the Purchase Order.

Despite Lily being willing and able to fulfill the remainder of the Purchase Order, Accelerate cancelled the Purchase Order on November 30, 2020 (Dkt. #8 ¶ 12). According to Accelerate, Lily "stopped production in June 2020 and did not resume delivery" or complete the production of the order "before the expiration of the Purchase Order due date of July 8, 2020" (Dkt. #12 at pp. 4–5). Accelerate thus claims that it lawfully terminated the contract because the Terms and Conditions provided Accelerate the right to unilaterally terminate the Purchase Order upon five days written notice to Lily (Dkt. #12 at p. 5). Lily claims the termination was unexpected, unjustified, and completely without notice.

## II. The Surcharge Agreement

To remedy the $1,800,000 Lily had incurred on materials in preparation of fulfilling the Purchase Order, the parties agreed that Accelerate would pay a $2.00 upcharge on other products it ordered from Lily until Accelerate paid off the $1,800,000 (Dkt. #8 ¶ 11) (the "Surcharge Agreement").[3] In exchange, "Lily would allow Accelerate the option to keep the [P]urchase [O]rder open until it needed Lily to resume production" (Dkt. #8 ¶ 11). The $1,800,000 would then "be available as a pro-rata credit on future hand sanitizer orders" (Dkt. #8 ¶ 11).

In April 2021, Accelerate informed Lily that it was no longer willing to pay the $2.00 surcharge, nor honor its agreement to pay the balance of the $1,800,000 (Dkt. #8 ¶ 13). By this point, Accelerate had paid just over $200,000 under the Surcharge Agreement.

---

[3] As alleged in the Amended Complaint, the $2.00 upcharge under the Surcharge Agreement applied to "Accelerate's orders of *other products*," not to the hand sanitizers produced under the Purchase Order (Dkt. #8 ¶ 11)

3

### III.     Procedural History

On July 21, 2021, Lily sued Accelerate for breach of the Purchase Order and breach of the duty of good faith and fair dealing (Dkt. #1). On October 4, 2021, Lily filed its Amended Complaint to include the Purchase Order as an exhibit, and added claims for unconscionability, illusory contract, and breach of the Surcharge Agreement (Dkt #8). On October 18, 2021, Accelerate filed the present motion, requesting the Court dismiss Lily's Amended Complaint (Dkt. #12). On November 1, 2021, Lily filed its response (Dkt. #13). On November 8, 2021, Accelerate filed a reply in support of its motion of dismiss (Dkt. #14), to which Lily filed a sur-reply on November 15, 2021 (Dkt. #15).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Accelerate moves for dismissal of Lily's claims for breach of the Purchase Order, breach of the Surcharge Agreement, unconscionability, illusory contract, and breach of the duty of good faith and faith dealing. Specifically, Accelerate argues that (1) Lily's claim for breach of the Purchase Order should be dismissed because the Purchase Order expressly authorized Accelerate

5

to terminate the contract; (2) Lily's claims of unconscionability and illusory contract are precluded as a matter of law under the Georgia Uniform Commercial Code (the "UCC"); (3) Lily's claim for breach of the Surcharge Agreement should be dismissed because the Terms and Conditions in the Purchase Order do not permit modifications; and (4) Lily's claim for breach of the duty of good faith and fair dealing should be dismissed because it cannot exist independent of a breach of contract claim and may not run contrary to the express terms of the Purchase Order (Dkt. #12). For the reasons discussed below, the Court finds dismissal of Lily's claims for unconscionability, illusory contract, and breach of the duty of good faith and fair dealing warranted.

**I.  Applicable Law**

As a preliminary matter, the Court must determine the appropriate substantive law to apply to Lily's claims. Accelerate argues the claims should be construed under Georgia law, not Texas law, pursuant to the Purchase Order's choice-of-law provision contained in the Terms and Conditions (Dkt. #12 at p. 8). The choice-of-law provision states:

> <u>Governing Law</u>. All matters arising out of or relating to this Order shall be governed by and construed in accordance with internal laws of the State of Georgia without giving effect to any choice or conflict of law provision or rule (whether of the State of Georgia or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than those of the State of Georgia.

(Dkt. #8, Exhibit 1 at p. 4 ¶ 26).

In diversity cases, the Court applies "the law of the forum state to determine which state's law applies." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005); *see also Provitas, LLC v. Quality Ingredients Corp.*, No. 4:21-CV-00196, 2021 WL 5907790, at * 12 (E.D. Tex. Dec. 14, 2021) ("[A] court sitting in diversity applies the forum's choice of law rules) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). This case is presently before the Court on diversity grounds pursuant to 28 U.S.C. § 1332 (Dkt. #8 ¶¶ 2–3). However,

the Court need not engage in a choice-of-law analysis here.

"When there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis." *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 213, 222 (5th Cir. 2005). In this case, the parties do not dispute that the substantive law governing their issues is the UCC as both parties are merchants[4] and the contracts at issue concern the sale of tangible goods.[5] Both Georgia and Texas have adopted the UCC, and the relevant provisions of the Texas UCC and the Georgia UCC are identical. For example, the Texas UCC and the Georgia UCC both provide identical definitions of "contract," "termination," and "cancellation," as well as identical rules governing the formation and modification of a contract. *Compare* TEX. BUS. & COM. CODE §§ 2.106, 2.201, 2.206, 2.209, *with* O.C.G.A. §§ 11-2-106, 11-2-201, 11-2-206, 11-2-209. Further, the Texas UCC and the Georgia UCC impose identical obligations on contracting parties, and identical rules on breach and repudiation, performance, unconscionability, and the types of remedies available to a prevailing party. *Compare* TEX. BUS. & COM. CODE §§ 2.301, 2.501, 2.601, and 2.701, *et seq.*, *with* O.C.G.A. §§ 11-2-301, 11-2-501, 11-2-601, and 11-2-701, *et seq.* Thus, there is no difference in the relevant Texas substantive law and Georgia substantive law applicable to the Lily's claims.

Accordingly, because the relevant substantive laws of Georgia and Texas do not conflict, the Court need not undertake a choice-of-law analysis to determine whether the provision in the Purchase Order is controlling in this case. Rather, the Court will apply Texas UCC law to Lily's claims. *See Wales v. Alliant Techsys., Inc.*, No. 1:06-CV-622, 2008 WL 11348350, at *3 (E.D. Tex.

---

[4] The UCC defines a "merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." TEX. BUS. & COM. CODE § 2.104; O.C.G.A. 11-2-104. Neither party disputes that they are both merchants under the UCC.
[5] The UCC defines a "good" as a "thing[ ] . . . which [is] movable at the time of identification to the contract for sale." TEX. BUS. & COM. CODE § 2.105(a); O.C.G.A. 11-2-105(a). Hand sanitizer unquestionably satisfies this definition.

Oct. 24, 2008) (applying Texas law after concluding that Georgia and Texas agree on the relevant UCC provisions); *Heritage Auctions, Inc. v. Hopp*, No. 3:10-CV-482, 2011 WL 13290743, at *2 (N.D. Tex. Sept. 26, 2011) (applying Texas law where Texas UCC and Nevada UCC were identical); *see also J.D. Fields & Co., Inc. v. U.S. Steel Intern., Inc.*, 426 F. App'x 271, 276 (5th Cir. 2011) (stating that "[w]here the UCC applies, it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedures set forth in the UCC.").

## I. Count One: Breach of the Surcharge Agreement

Lily's first cause of action asserts a claim for breach of contract of the Surcharge Agreement (Dkt. #8 ¶¶ 14–16). Specifically, Lily asserts that Accelerate breached the Surcharge Agreement by paying approximately $200,000 under the agreement, then subsequently repudiating the agreement despite still owing approximately $1,600,000. After reviewing the Amended Complaint, and the arguments contained in the briefing, the Court finds that Lily has stated a plausible claim for breach of contract as it relates to the Surcharge Agreement.

## II. Count Two: Unconscionability

Lily's second cause of action alleges the termination provision contained in the Terms and Conditions of the Purchase Order is unconscionable (Dkt. #8 ¶¶ 17–19). As a preliminary matter, Lily cites no legal authority for the proposition that "unconscionability" under the Texas UCC is an independent cause of action upon which Lily can recover damages. Section 2.302 of the UCC covers unconscionability, and provides as follows:

> (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the applicable of any unconscionable clause as to avoid any unconscionable result.

The question of whether § 2.302 operates as an affirmative ground for relief has not been examined by Texas courts. However, district courts within this Circuit have concluded that the unconscionability provisions within the Texas UCC are defensive in nature and are not intended to create independent causes of action upon which relief may be granted. *See Barnard v. Home Depot U.S.A., Inc.*, No. A-06-CA-491, 2006 WL 3063430, at *3 (W.D. Tex. Oct. 27, 2006); *Oden v. Vanguard Car Rental USA, Inc.*, No. 2:07-CV-261, 2008 WL 901325, at *2 (E.D. Tex. Mar. 31, 2008) (holding that "under the Texas UCC, there is no affirmative cause of action for penalty or an unconscionable term in a lease contract," because "those matters are defenses that may be raised against enforcement of a contract"); *see also* 49 TEX. PRAC., CONTRACT LAW § 3.11 (West) (2006) ("Under the [Texas] UCC, unconscionability is an affirmative defense to the enforcement of a contract, whereas unconscionability under the DTPA may support [various damages].").

Additionally, "other jurisdictions interpreting similar provisions of their own UCC statutes have uniformly held that these provisions are purely defensive in nature, and do not provide for the recovery of damages." *Barnard*, 2006 WL 3063430, at *3 n.3 (collecting cases); *see also Cowin Equip. Co. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984) (holding identical provisions under Alabama and Ohio UCC statutes are defensive in nature, and rejecting the argument that damages can be awarded based on unconscionability); *Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1318 (N.D. Ga. 1998) (interpreting virtually identical statutory language as codifying the common law defense of unconscionability, and concluding that "the Court finds no authority that the doctrine of unconscionability provides a basis for affirmative relief."). Thus, because Lily has not shown that the UCC provides an independent cause of action for unconscionability, Lily's claim must be dismissed.

Moreover, even assuming *arguendo* that Texas would recognize an independent cause of action for damages arising from an unconscionable contract provision under the UCC, Lily has not adequately pleaded that the termination provision is unconscionable. To make out of a case of unconscionability under Texas law, a plaintiff must demonstrate both procedural and substantive unconscionability. *Bongalis-Royer v. RJ Worldwide, LLC*, No. 4:14-CV-330, 2015 WL 12778846, at *9 (E.D. Tex. July 16, 2015) (citing *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. App.—Texarkana 1975)). Procedural unconscionability "means that oppression and unfairness must taint the negotiation process leading to the agreement's formation." *El Paso Nat. Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61 (Tex. App.—Amarillo 1998), *rev'd on other grounds*, 8 S.W.3d 309 (Tex. 1999) (citation omitted). Procedural unconscionability is concerned with assent and focuses on the facts surrounding the bargaining process. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 499 (Tex. 1991) (Gonzalez, J., concurring). In determining procedural unconscionability, courts may consider the following factors: "the presence of deception, overreaching, and sharp business practices, the absence of a viable alternative, and the relative acumen, knowledge, education, and financial ability of the parties involved." *El Paso*, 964 S.W.2d at 61.

On the other hand, substantive unconscionability is concerned with the fairness or oppressiveness of the resulting agreement. *Id.* To determine substantive unconscionability, courts examine: (1) the entire atmosphere in which the agreement was made; (2) alternatives, if any, available to the parties at the time of formation; (3) the non-bargaining ability of a party; (4) whether the contract was illegal or against public policy; (5) and whether it is oppressive or unreasonable. *Id*. The purpose of this analysis is to prevent oppression and "unfair surprise" rather than to alter the allocation of risks stemming from parties' differing bargaining positions. *Davis v. EGL Eagle Global Logistics L.P.*, 243 F. App'x. 39, 45 (5th Cir. 2007); *see also* TEX. BUS. & COM.

CODE § 2.302 cmt. 1 ("The basic test is whether, in the light of the general commercial background, and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.").

At this stage, the Court is assessing only whether Lily states a plausible claim to relief. "Assessment of these various factors is likely to be fact-intensive and better addressed at the summary judgment or trial stage." *Curtis v. Cerner Corp.*, 621 B.R. 141, 183 (S.D. Tex. 2020). However, Lily's Amended Complaint "must at least indicate that unconscionability is a plausible theory." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (noting that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")).

Lily's Amended Complaint is entirely devoid of any facts that could even impliedly suggest procedural unconscionability. Texas law "requires unfair surprise or oppression" for the Court to find procedural unconscionability. *In re Palm Harbor Homes, Inc.*, 195 S.W.2d 672, 679 (Tex. 2006). "Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005). The "only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Micheletti v. Uber Techs., Inc.*, 213 F. Supp. 3d 839, 848 (W.D. Tex. 2016) (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002)). Here, Lily has not pleaded any facts indicating that the termination provision was the result of fraud, misrepresentation, or deceit. Further, Lily has not pleaded that it was "incapable of understanding the agreement." *Michelleti*, 213 F. Supp. 3d at 848. Thus, because

Lily has not pleaded any facts suggestive of procedural unconscionability, the Court finds that Lily has failed to plead a claim for unconscionability upon which relief can be granted.[6]

In sum, even if unconscionability under the UCC is recognized as an independent cause of action in Texas, the Court is not persuaded that Lily could prevail on this claim as pleaded. Accordingly, dismissal of Lily's unconscionability claim is appropriate.

### III. Count Three: Illusory Contract

Under Lily's third cause of action, Lily claims that the termination provision in the Terms and Conditions constitutes an illusory promise (Dkt. #8 ¶¶ 20–23). However, just like Lily's claim for unconscionability, Lily cites no legal authority for the proposition that illusoriness, as pleaded in this case, is an independent cause of action upon which Lily can recover damages. Generally, whether a contract or contractual provision is illusory is an affirmative defense to the contract's validity. *See Inred AdvancePCS Health LP*, 172 S.W.3d 603, 607 (Tex. 2005) (considering "affirmative defense[s]" to enforcement of the contract, including illusoriness, after defendant had established the existence of a contract governing the dispute); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550–51 (5th Cir. 2018) (explaining that an allegation that a particular provision of a contract is illusory is a challenge to the validity of the contract); *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex. 1994) (holding that an illusory promise of performance invalidates a contract).

That said, it appears from Lily's Amended Complaint that its claim for illusory contract was intended to support a cause action for breach of an implied contract based on the parties' conduct. For example, after arguing that the termination provision is illusory, Lily states:

> Nevertheless, the conduct between the parties recognized the existence of a contract whereby Accelerate would purchase 8 million bottles of hand sanitizer from Lily.

---

[6] Because Lily did not adequately plead procedural unconscionability, the Court does not reach whether Lily adequately pleaded substantive unconscionability.

> Accordingly, pursuant to Article II of the UCC, the parties formed an enforceable contract for Lily to manufacture and supply and for Accelerate to purchase, 8 million bottles of hand sanitizer independent of the purchase order

(Dkt. #8 ¶ 25). To the extent that Lily intended to bring a cause of action for breach of an implied contract based on the theory of illusoriness and requests leave to amend its complaint to more accurately plead the claim as one for breach of contract, such leave will be granted. Otherwise, dismissal of Lily's cause of action for illusory contract is appropriate.

### IV.     Count Four: Breach of the Hand Sanitizer Purchase Order

In its fourth cause of action, Lily asserts breach of contract of the hand sanitizer Purchase Order. Specifically, Lily claims Accelerate breached the Purchase Order first by failing to accept timely delivery, then by terminating the agreement without notice (Dkt. #8 ¶¶ 24–27). After reviewing the Amended Complaint, and the arguments contained in the briefing, the Court finds that Lily has stated a plausible claim for breach of contract as it relates to the Purchase Order.

### V.     Count Five: Breach of the Duty of Good Faith and Fair Dealing

Finally, Lily raises an independent cause of action based on the duty of good faith and fair dealing (Dkt. #8 ¶¶ 28–32). Accelerate argues this claim must be dismissed because neither Texas law nor the UCC create an independent cause of action for breach of the duty of good faith and fair dealing that would apply in this case. The Court agrees.

Texas courts "recognize an independent cause of action for breach of the duty of good faith and fair dealing only where a 'special relationship' exists between the parties, one where there is substantially unequal bargaining power." *Sw. Materials Handling Co. v. Nissan Motor Co.*, No. 3:98-CV-2367, 2000 WL 1664160, at *3 (N.D. Tex. Nov. 3, 2000). "The 'special relationship' cause of action in tort for breach of the duty of good faith and fair dealing, however, does not extend to ordinary commercial contractual relationships such as the supplier-distributor

relationship." *McClendon v. Ingersoll–Rand Co.*, 757 S.W.2d 816, 819–20 (Tex. App.—Houston [14th Dist.] 1988), *rev'd on other grounds*, 779 S.W.2d 69 (Tex. 1989). Rather, in the commercial context, the Texas UCC imposes on "[e]very contract . . . an obligation of good faith in its performance or enforcement." TEX. BUS. & COM. CODE § 1.203. But this good faith covenant in § 1.203 only serves to guide the construction of the explicit terms in the agreement. *Sw. Materials*, 2000 WL 1664160, at *3. It does not create an independent cause of action for failure to perform a contract in good faith. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591 (Tex.1992), *superseded by statute on other grounds as stated in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–25 (Tex. 2002) (interpreting § 1.203 to mean that "a breach of this contractual duty of good faith and fair dealing gives rise only to a cause of action for breach of contract and does not give rise to an independent tort cause of action"); *Lubbock Bev. Co., Inc. v. Miller Brewing Co.*, No. 5:01-CV-124, 2002 WL 31011266, at *15 (N.D. Tex. June 4, 2002) (collecting cases). The "Uniform Commercial Code Comment" to § 1.203 confirms as much, explaining:

> This section does not support an independent cause of action for failure to perform or enforce in good faith. Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power. This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.

TEX. BUS. & COM. CODE § 1.203 cmt. 2.

Further, Lily's claim for breach of the duty of good faith and fair dealing is based on Accelerate's exercise of the termination provision in the Purchase Order. Lily asserts that Accelerate "cannot, consistent with the duty of good faith and fair dealing, render Lily's timely delivery of goods impossible and then exercise a right of termination purporting to relieve it of the

obligation to pay for undelivered goods" (Dkt. #8 ¶ 30). This is the same provision and factual background Lily alleges in support of its breach of contract claim under Count Four. Thus, Lily's claim for breach of the duty of good faith and fair dealing is generally duplicative of its claims for breach of contract. Accordingly, dismissal of Lily's claim for breach of the duty of good faith and fair dealing is appropriate, and the Court will instead consider Lily's allegations of bad faith to be subsumed within its breach of contract claims. *See generally Hallmark v. Hand*, 885 S.W.2d 471, 480 (Tex. App.—El Paso 1994) (stating a breach of the implied duty of good faith under the UCC "gives rise only to a cause of action for breach of contract"); *Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, No. H-15-100, 2015 WL 5825128, at *7 (S.D. Tex. Oct. 6, 2015); *Singer v. Carrington Lab'ys, Inc.*, No. 3:01-CV-1776, 2003 WL 22300140, at *10 (N.D. Tex. Oct. 3, 2003) (applying New York UCC law and stating that "[a] claim for breach of the implied covenant of good faith will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.").

Alternatively, should Lily seek leave to amend its complaint to more expressly include breaches of the implied duty of good faith and faith dealing within its breach of contract claims, such leave will be granted.

## CONCLUSION

It is, therefore, **ORDERED** that Defendant's Motion to Dismiss (Dkt. #12) is **GRANTED in part** and **DENIED in part.**

It is further **ORDERED** that Plaintiff's claims for unconscionability, illusory contract, and breach of the duty of good faith and fair dealing are **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

**SIGNED this 11th day of August, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE