# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| L.O.D.C. GROUP, LTD, | § |
| *Plaintiff,* | § § § |
| v. | § Civil Action No. 4:21-CV-00568 § Judge Mazzant |
| ACCELERATE360, LLC, | § § § |
| *Defendant.* | § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #24). Having considered the motion, the responses, and the relevant pleadings, the Court finds that the motion should be **DENIED**.

### BACKGROUND

This case is a contracts dispute between Plaintiff L.O.D.C. Group, Ltd ("Lily") and Defendant Accelerate360, LLC ("Accelerate"). Lily is a Texas limited partnership with its principal place of business in Denton County, Texas, that privately manufactures nutritional supplements and personal care products (Dkt. #8 ¶¶ 1, 2).[1] Accelerate is a Delaware limited liability company with its principal place of business in Cobb County, Georgia, that works as a product supplier for a network of retailers (Dkt. #8 ¶ 3).[2]

### I.      The Hand Sanitizer Contract

The relationship between Lily and Accelerate began in the Spring of 2020 during the peak

---

[1] Lily has three limited partners, each of whom is a natural person and resident of Texas. Lily's sole general partner is a Texas corporation with its principal place of business in Texas (Dkt. #8 ¶ 2).

[2] Accelerate's sole member is a Delaware limited liability company with a principal place of business in Georgia. The sole member of that entity is a Delaware limited liability company with a principal place of business in Florida. The sole member of that entity is a Delaware corporation with a principal place of business in Florida (Dkt. #8 ¶ 3).

of the COVID-19 pandemic. Accelerate first approached Lily, inquiring whether Lily could manufacture a bulk amount of private label hand sanitizer. On April 8, 2020, Lily sent Accelerate a price quote proposal (the "Quote") indicating that it had availability to manufacture 1,000,000 2oz bottles monthly at $.0.90 per unit, and 1,250,000 8oz bottles monthly for $2.00 per unit, with availability for both in late May 2020 (Dkt. #26, Exhibit 1 at p. 16). The parties then negotiated back and forth about the volume and price of the goods. On April 20, 2022, Accelerate e-mailed its desire to purchase a total of 4,000,000 2oz bottles and 4,000,000 8oz bottles (Dkt. #26, Exhibit 1 at p. 18). Accelerate also inquired whether Lily could deliver the products on a "rolling scale as finished product is available" beginning with delivery of 1,000,000 of each size by the end of May or beginning of June (Dkt. #26, Exhibit 1 at p. 18). In response, Lily thanked Accelerate for sending over the total order amount and stated it could have an initial delivery consisting of 700,000 8oz bottles ready to ship the week of June 1, and 1,000,000 2oz bottles ready to ship the week of June 8 (Dkt. #26, Exhibit 1 at p. 18).

After subsequent discussion, Accelerate requested the price of the 8oz bottle be reduced to $1.86 per unit in exchange for Accelerate's commitment to purchase 4,000,000 8oz and 4,000,000 2oz bottles (Dkt. #26, Exhibit 1 at pp. 21–23). Both parties agreed to this arrangement (Dkt. #26, Exhibit 1 at pp. 24–23). Lily then indicated it would "work on procurement of the packaging and raw materials to fulfill these quantities, and subsequent volume beyond," and that "things [could] get rolling" as soon as it received a purchase order from Accelerate (Dkt. #26, Exhibit 1 at pp. 21, 25). On April 28, 2020, Accelerate sent Lily a purchase order (Dkt. #8, Exhibit 1) (the "Purchase Order"). The Purchase Order incorporates the terms as agreed to by the parties—namely that Accelerate would purchase: (1) 4,000,080 units of 2oz hand sanitizer at $0.90 per unit;

and (2) 4,000,032 units of 8oz hand sanitizer at $1.86 per unit (Dkt. #8, Exhibit 1).[3] In total, Accelerate committed to purchasing 8,000,000 bottles of hand sanitizer from Lily for a total purchase price of $11,040,131.52. The Purchase Order lists the "due date" as July 8, 2020.

However, in addition to these agreed-upon quantity, price, and delivery terms, Accelerate attached to the Purchase Order three pages of additional terms and conditions (Dkt. #8, Exhibit 1 at pp. 2–4) (the "Terms and Conditions"). According to Lily, the Terms and Conditions were never discussed by the parties (*see* Dkt. #26, Exhibit 1 ¶ 11 ("These 'Terms and Conditions' were not a part of any negotiations between the parties")).[4] Of particular relevance to this dispute, the Terms and Conditions contain a termination provision allowing Accelerate to terminate the Purchase Order, "in whole or in part, at any time with or without cause for undelivered Goods on five days' written notice to" Lily (Dkt. #8, Exhibit 1 at p. 3 ¶ 18). The termination provision also provides that Accelerate may terminate the Purchase Order "with immediate effect upon written notice to [Lily], either before or after the acceptance of the Goods, if [Lily] has not performed or complied with any of these Terms, in whole or in part" (Dkt. #8, Exhibit 1 at p. 3 ¶ 18).

After receiving the Purchase Order, Lily began to perform its obligations under the contract. Lily acquired all the raw materials and packaging supplies necessary to fill Accelerate's order. Lily then began delivery as agreed on June 1, 2020, and continued to deliver "one or more truckloads of finished goods to Accelerate almost every weekday—that is, until June 22, 2020 (Dkt. #26, Exhibit 1 at p. 6 ¶¶ 13–14). On June 22, 2020, Lily notified Accelerate that a delivery was available for pickup (Dkt. #26, Exhibit 1 at p. 32). However, instead of accepting delivery of

---

[3] Based on the Purchase Order, the amount ordered of each unit slightly exceeds 4,000,000 to compensate for the number of units packaged per case.
[4] Lily's Vice President, Dillon Lovelace ("Lovelace"), claims that he "did not notice that the pdf file attached to the email was four pages long such that it included three additional pages of 'Terms and Conditions'" (Dkt. #26, Exhibit 1 at p. 5 ¶ 11). Lovelace further claims that "Lily did not first become aware of [the Terms and Conditions] until October 29, 2020" (Dkt. #26, Exhibit 1 at p. 5 ¶ 11).

the goods, Accelerate responded that it was not prepared to take delivery because it lacked adequate warehouse space (Dkt. #26, Exhibit 1 at p. 32). Accelerate then asked how long Lily could store the products while still keeping to the production schedule (Dkt. #26, Exhibit 1 at p. 32). Lily responded that "[w]ith the current four truckloads we have staged (3-8 oz & 1-2oz), we are currently running into space constraints. With the additional production scheduled and other truckloads being staged, we would really need to get these picked up this week if possible" (Dkt. #26, Exhibit 1 at p. 34).

According to Accelerate, it was Accelerate's "TOP Priority" to obtain a suitable warehouse space so that it could accept delivery of the finished hand sanitizers Lily had manufactured (Dkt. #26, Exhibit 1 at p. 39). Yet nearly three weeks passed by and Accelerate still had not obtained a suitable warehouse space (Dkt. #26, Exhibit 1 at p. 38). On July 16, 2020, Accelerate instructed Lily to completely halt production (*see* Dkt. #26, Exhibit 1 at p. 38 ("Please make sure we do not have any new sanitizer production in the schedule until we can sort through these lots and inventory moves")). Lily had "little choice to comply given that Lily was running out of room to store Accelerate's finished goods" (Dkt. #8 ¶ 9). By the time Accelerate reached an agreement with a new warehouse on July 22, 2020, Lily "had substantial inventories of finished goods waiting for Accelerate to take delivery," which "were all unique to Accelerate's order and could not be used for other" orders (Dkt. ¶ 9). To be precise, Lily was "sitting [on] 533,040 bottles of 8oz and 28,080 bottles of 2oz ready to be staged for shipments" (Dkt. #26, Exhibit 1 at p. 42).

By the beginning of August 2020, Accelerate had accepted delivery of the majority of the finished hand sanitizers that Lily had been storing (Dkt. #26, Exhibit 1 at p. 46). However, Accelerate did not authorize Lily to resume or complete production of the remainder of the Purchase Order. As a consequence, Lily was left with a substantial amount of the unique materials Lily had obtained to fill Accelerate's order—including specialty packaging, labels, raw materials, and bulk

blended sanitizer (Dkt. #8 ¶ 11). Without the authorization to turn these materials into finished products, Accelerate left Lily with no apparent recompense for the expenses Lily had incurred in preparation of the Purchase Order.

Despite Lily being willing and able to fulfill the remainder of the Purchase Order, Accelerate cancelled the Purchase Order on November 30, 2020 (Dkt. #8 ¶ 12). According to Accelerate, Lily "stopped production in June 2020 and did not resume delivery" or complete the production of the order "before the expiration of the Purchase Order due date of July 8, 2020" (Dkt. #12 at pp. 4–5). Accelerate thus claims that it lawfully terminated the contract because the Terms and Conditions provided Accelerate the right to unilaterally terminate the Purchase Order upon five days written notice to Lily (Dkt. #12 at p. 5). Lily claims the termination was unexpected, unjustified, and completely without notice.

## II.   The Vitamin Pack Contract

On July 14, 2020, Accelerate e-mailed Lily "to discuss a big [and] immediate vitamin pack opportunity" (Dkt. #26, Exhibit 1 at p. 37). After discussing the opportunity, Lily e-mailed Accelerate a price quote for the vitamin stick packs—$1.90 per 10ct display carton, and $5.60 per 30ct display carton—along with the amount of display cartons that would be sent with each shipment (Dkt. #26, Exhibit 1 at p. 43). On August 20, 2020, Accelerate stated it would send Lily a purchase order for the vitamin stick packs (the "Vitamin Pack Contract").

## III.   The Surcharge Agreement

On September 30, 2020, Lily notified Accelerate that due to Accelerate's instruction not to resume delivery of the hand sanitizers, Lily "ha[d] a significant amount of components and materials procured against [the Hand Sanitizer Purchase Order] which [were] starting to age" (Dkt. #26, Exhibit 1 at p. 56). After Accelerate responded back that it would advise Lily on its future production needs if the needs arose, Lily e-mailed a report on its aging inventory (Dkt. #26,

5

Exhibit 1 at p. 58). The report shows that Lily had acquired $1,800,000 worth of materials to complete Accelerate's Purchase Order (Dkt. #26, Exhibit 1 at p. 58). Lily then stated "[in] the spirit of [ ] partnership, [Lily] would like to see Accelerate[ ] make a deposit for the [aging materials]" (Dkt. #26, Exhibit 1 at p. 58).

The parties discussed the issue and ultimately came to an agreement (the "Surcharge Agreement"). Under the Surcharge Agreement, Accelerate would pay off the $1,800,000 by paying a $2.00 surcharge on each vitamin stick pack order, and in return "Lily would allow Accelerate the option to keep the [hand sanitizer] purchase order open until it needed Lily to resume production" (Dkt. 8 ¶ 11). The $1,800,000 would then be available to Accelerate "as a pro-rata credit on future hand sanitizer orders" (Dkt. #8 ¶ 11). On December 3, 2020, Accelerate sent Lily a forecast of its anticipated 2021 vitamin stick pack orders demonstrating that the Surcharge Agreement would be fully paid for by the end of 2021 (Dkt. #26, Exhibit 1 at p. 8 ¶ 21).

Based on the Surcharge Agreement, Lily accepted and filled Accelerate's orders under the Vitamin Pack Contract, and sent Accelerate a series of invoices reflecting the agreed-upon $2.00 per order surcharge (Dkt. #26, Exhibit 1 at pp. 67–70). On February 24, 2021, Lily contacted Accelerate because the invoices for the surcharge amounts had not been paid (Dkt. #26, Exhibit 1 at p. 76). On February 25, 2021, Accelerate apologized to Lily about the delay, and promised Lily it would receive payment the following week (Dkt. #26, Exhibit 1 at p. 78). Accelerate then paid Lily a sum of $200,016.

On March 29, 2021, Lily notified Accelerate that it was $488,832 behind on surcharge payments (Dkt. #26, Exhibit 1 at p. 84). To cover the past-due amounts, Lily requested Accelerate pay $244,416 by the end of March, and $244,416 by the end of April. Accelerate replied that it was "having some internal conversations about all of this" (Dkt. #26, Exhibit 1 at p. 85).

Thereafter, Accelerate "informed Lily that it was no longer willing to pay the $2.00 [surcharge] on future orders and was not willing to pay any portion of the [past-due] $488,832" (Dkt. #26, Exhibit 1 at p. 14 ¶ 36). The parties' relationship broke down completely, leaving Lily with around $1,600,000 unpaid under the Surcharge Agreement.

### IV.     Procedural History

On July 21, 2021, Lily sued Accelerate for breach of the Purchase Order and breach of the duty of good faith and fair dealing (Dkt. #1). On October 4, 2021, Lily filed an Amended Complaint (Dkt. #8) to include the Purchase Order as an exhibit, and added claims for unconscionability, illusory contract, and breach of the Surcharge Agreement (Dkt. #8). On October 18, 2021, Accelerate filed a motion to dismiss, requesting the Court dismiss all claims brought in Lily's Amended Complaint (Dkt. #12). On August 11, 2022, the Court granted the motion in part, dismissing Lily's claims for unconscionability, illusory contract, and breach of the duty of good faith and fair dealing (*see* Dkt. #39).

On March 14, 2022, Accelerate filed the present motion for summary judgment (Dkt. #24). On April 4, 2022, Lily filed a response (Dkt. #26). On April 11, 2022, Accelerate filed a reply in support of its motion for summary judgment (Dkt. #27), to which Lily filed a sur-reply on April 18, 2022 (Dkt. #28).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson*

*v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

As the party moving for summary judgment, Accelerate has the burden of showing that no genuine material fact exists and that it is entitled to judgment as a matter of law. Accelerate raises two primary reasons why it is entitled to summary judgment on Lily's breach of contract claims.[5] First, Accelerate argues that it did not breach the Purchase Order as a matter of law because its conduct was authorized by the terms of the agreement. More specifically, Accelerate contends that the Purchase Order authorized Accelerate to terminate the agreement both (1) without cause and (2) if Lily failed to comply with the terms of the Purchase Order, both of which Accelerate raises to justify its termination. Second, Accelerate argues that Lily cannot prevail on its claim for breach of the Surcharge Agreement because Lily's Amended Complaint alleges the Surcharge Agreement was an "accord" or "modification" of the Purchase Order, and Accelerate contends the terms of the Purchase Order unambiguously disallow modifications. For these reasons, Accelerate argues it is entitled to summary judgment and requests Lily's breach of contract claims be dismissed. Lily responds that summary judgment is not appropriate because the operative terms of the Purchase Order do not preclude Lily's breach of contract claims as a matter law, and because Accelerate has failed to show the absence of a genuine issue of material fact as to whether the parties intended the Surcharge Agreement to be a modification of the Purchase Order.

After a careful review of the record and the arguments presented, the Court is not convinced

---

[5] Accelerate also moved for summary judgment on Lily's claims for illusory contract and breach of the duty of good faith and fair dealing (Dkt. #24 at pp. 6–7). However, these arguments were rendered moot by the Court's Order on Accelerate's Motion to Dismiss (Dkt. #39), in which the Court dismissed both of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

that Accelerate has met its burden of demonstrating that there is no material issue of fact entitling Accelerate to judgment as a matter of law. Accordingly, the Court finds Accelerate is not entitled to summary judgment.

## CONCLUSION

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #24) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 12th day of August, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE